**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**STATE OF COLORADO; Jefferson County, Colorado; Board of County Commissioners of Jefferson County, Colorado; and David R. Braden, County Assessor, Jefferson County, Colorado, Defendants-Appellants.**

**No. 79–1193.**

United States Court of Appeals,
Tenth Circuit.

Submitted June 4, 1980.

Decided July 25, 1980.

Rehearing Denied Sept. 3, 1980.

John J. McCarthy, Jr., Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen. and Gilbert E. Andrews and David English Carmack, Attys., Tax Division, Dept. of Justice, Washington, D. C., with him on brief), for plaintiff-appellee; Joseph F. Dolan, U. S. Atty. and Jerre W. Dixon, Asst. U. S. Atty., Denver, Colo., of counsel.

Gail E. Shields, Denver, Colo., Sp. Counsel for Jefferson County, Bd. of County Com'rs and County Assessor (Stephen H. Kaplan, First Asst. Atty. Gen. and Billy Shuman, Sp. Asst. Atty. Gen., Denver, Colo., with him on brief), for defendants-appellants.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

The Rocky Flats Plant is a part of an integrated system of government-owned laboratories and plants operated to develop and produce nuclear weapons for national defense and is located in Jefferson County, State of Colorado. Rocky Flats consists of approximately 6,500 acres of land and approximately 95 buildings and structures, all of which are owned in fee simple by the United States.

The actual operation and day-to-day management of the Rocky Flats Plant has been accomplished through private companies acting under management contracts with the United States. Rockwell International Corporation is presently operating and managing the Rocky Flats Plant under a management contract referred to as Contract 3533. Rockwell is paid a fixed annual fee for its services.

In 1975 the Colorado General Assembly enacted a statute, now referred to as Colo. Rev.Stat. § 39–3–112 (Supp. 1979) (as amended), which provides in pertinent part as follows:

(1) When any real property . . . exempt from taxation is leased, loaned, or otherwise made available to and used by a . . . corporation in connection with a business conducted for profit, the lessee or user thereof shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property . . .

In 1976 the Jefferson County Tax Assessor notified Rockwell that it was a "user" of tax-exempt property, i. e. the Rocky Flats Plant, within the meaning of the Colorado statute and was liable for the tax on such use. For the taxable year 1976 the property was given a market value of $200,787,951 and an assessed value of $61,263,380. These total values were based on the following component values:

|  | Market Value | Assessed Value |
| --- | --- | --- |
| Land (350 Acres at $5,000 per acre) | $ 1,750,000 | $ 552,000 |
| Improvements | 125,506,215 | 38,651,860 |
| Machinery & Equipment | 73,531,736 | 22,059,520 |
|  | $200,787,951 | $ 61,263,380 |

Using the assessed values set forth above, the County Assessor for Jefferson County assessed Rockwell $4,632,246.69 for taxes payable to Jefferson County for the year 1976 with respect to the Rocky Flats Plant. To the extent that any such taxes are due

from Rockwell, the United States is obligated by Contract 3533 to provide funds for payment thereof, as such a charge is defined under that contract as a cost to be borne by the United States.

It was in this general setting that the United States brought the present action against the State of Colorado, the County of Jefferson, and various county officials, seeking a declaratory judgment that the tax sought to be imposed by Jefferson County on Rockwell was in reality a tax on property owned by the United States, and, as such, barred by the Supremacy Clause of the United States Constitution. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).

The parties agreed to a detailed stipulation of facts, and each moved for summary judgment. The trial court granted the motion of the United States, and entered judgment in favor of the United States. Basically, the trial court concluded that the tax which Jefferson County ostensibly sought to impose on Rockwell was in reality a tax on property owned by the United States, and therefore infringed on the immunity of the United States from the imposition of local taxes on government property. Specifically, the trial court held that the Colorado statute, as it was sought to be applied, was unconstitutional. The trial court's Memorandum Opinion and Order was published and appears as *United States v. State of Colorado*, 460 F.Supp. 1184 (D.C.Colo. 1978).

■ The State of Colorado initially argues that the United States does not have standing to bring the instant action, and that Rockwell is an indispensable party. We do not agree. In *United States v. Bureau of Revenue of State of New Mexico*, 291 F.2d 677 (10th Cir. 1961) we rejected a similar argument. In that case we held that the United States was the proper party, indeed the real party in interest, to prosecute an action to protect its sovereign rights and to assert the constitutional immunity of the United States from taxation by a state. See also *United States v. Allegheny County*, 322 U.S. 174, 191, 64 S.Ct.

908, 918, 88 L.Ed. 1209 (1944), where the Supreme Court held that "[t]he United States may question the taxation in order to protect its sovereignty over the property in question." It therefore follows that Rockwell is not an indispensable party.

■ Proceeding to the merits of the controversy, the key to the present problem is the relationship between Rockwell and the United States and the nature of the activity which the State of Colorado seeks to tax. From the stipulated facts we learn that Rockwell has a management contract with the United States. The managerial services which Rockwell is obligated to perform are to be performed at the Rocky Flats Plant. Rockwell does not have any lease, permit or license to the property in question, which is owned in fee simple by the United States. Any "use" it may make of the property is strictly delineated by the contract. In such circumstance, we agree with the trial court that the efforts of the State of Colorado to impose a tax on Rockwell under the provisions of Colo.Rev.Stat. § 39–3–112 (1973) (as amended) is in reality a tax on the property itself and, as such, barred under the doctrine of implied immunity first found in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819).

In arguing for reversal, the State of Colorado relies upon such cases as *United States v. Boyd*, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964); *United States v. City of Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1957); and *United States v. Township of Muskegon*, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1957). Those cases admittedly have similarities to the instant one, but we believe each to be distinguishable.

*United States v. Boyd*, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964) concerns the efforts of the State of Tennessee to impose a so-called contractor's use tax on Union Carbide Corp. and H. K. Ferguson Co., each of which had contracts with the Atomic Energy Commission relating to work and services to be performed at a nuclear plant in Oak Ridge, Tennessee. Under those contracts Union Carbide and

Ferguson procured materials, supplies and equipment which were used by the two companies in the performance of their contractual obligations to the Atomic Energy Commission. Title to materials thus purchased passed directly from the vendor to the United States. Tennessee collected from Carbide and Ferguson a sales tax, and a contractor's use tax upon purchases made by them under their contracts with the Commission. The companies and the Commission sued to recover the taxes thus paid, claiming that their collection infringed upon the implied constitutional immunity of the United States. The Tennessee Supreme Court refused to permit the collection of the sales tax, but sustained the collection of the contractor's use tax. On appeal, the United States Supreme Court affirmed.

The Tennessee contractor's use tax imposes a tax on contractors using property in performance of their contracts irrespective of the ownership of the property and of the place where the goods are purchased. The tax, at the sales and compensating use tax rate, is measured by the purchase price or fair market value of the property used by the contractors and is to be collected only when a sales tax on local purchases or a compensating use tax on out-of-state goods has not previously been collected in connection with the same property.

In *Boyd*, the State of Tennessee imposed this contractor's use tax on contractors who purchased personal property from third parties and thereafter used such property in the course of performing under their contracts with the United States. In the instant case the State of Colorado is not seeking to impose a tax on goods acquired by Rockwell from third parties and then used by Rockwell in performing under its contract with the United States. Rather, the State of Colorado seeks to impose a tax on Rockwell to be measured by the value of the Rocky Flats Plant, which, as indicated, is wholly government owned, on the basis that Rockwell is "using" the land and improvements when it goes onto the Rocky Flats facility to render the management services called for by the contract. We think the present case thus differs significantly from *Boyd*.

*United States v. City of Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1957) is also considerably different than the instant one. There the United States owned an industrial plant in Detroit, Michigan. It leased a portion of the plant to the Borg-Warner Corporation which was to be used by the latter in its private manufacturing business. A Michigan statute provides that when tax-exempt real property is used by a private party in a business conducted for profit the private party is subject to taxation to the same extent as though he owned the property. The Michigan courts upheld the tax as applied to Borg-Warner, and, on appeal, the United States Supreme Court affirmed. In our view Borg-Warner and Rockwell are by no means similarly situated. Borg-Warner leased government real property and conducted thereon its own private manufacturing business. Rockwell is merely going onto government owned property where it performs its management services.

*United States v. Township of Muskegon*, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1957) is quite close to the *City of Detroit* case. In *Muskegon* the United States permitted Continental Motors Corporation to use a government owned manufacturing plant where it apparently made goods which were sold to the United States under contract. *Muskegon*, then, like *City of Detroit*, involves private corporations going onto government property and there producing goods which are later sold for a profit. Neither is akin to the instant case, where Rockwell is merely performing its contractual obligations on government owned property.

Although the continued vitality of *United States v. County of Allegheny*, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944) has been questioned, it nonetheless approximates the present case. In *Allegheny*, Mesta Machine Company entered into a contract to manufacture ordnance for the United States. Certain equipment was installed in Mesta's plant at government cost and was to remain the property of the United States. The

State of Pennsylvania revised upward Mesta's previously determined assessment for ad valorem taxes by the value of the government furnished and government owned equipment installed in the Mesta plant. The Supreme Court of Pennsylvania upheld the increased tax on Mesta, but the United States Supreme Court reversed. The Supreme Court, in reversing, commented that the "substance of this procedure is to lay an ad valorem general property tax on property owned by the United States." 322 U.S. at 185, 64 S.Ct. at 915. We believe that the "substance" of the present procedure is not to tax Rockwell's "use" of government owned property, but to lay an ad valorem general property tax on property owned by the United States.

Judgment affirmed.