**MESA VERDE COMPANY,**
Plaintiff–Appellee,

v.

The **MONTEZUMA COUNTY BOARD OF EQUALIZATION** and the **Montezuma** County Assessor, Defendants–Appellants,

and

The Property Tax Administrator of the State of Colorado, Intervenor.

No. 94SA20.

Supreme Court of Colorado, En Banc.

April 24, 1995.

Rehearing Denied May 15, 1995.

Holme Roberts & Owen LLC, Jeffrey A. Chase, James D. Butler, Stephanie M. Tuthill, Denver, for plaintiff-appellee.

Bob D. Slough, Cortez, for defendants-appellants.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Larry A. Williams, First Asst. Atty. Gen., General Legal Services Section, Denver, for intervenor.

Justice MULLARKEY delivered the Opinion of the Court.

The appellants, the Montezuma County Board of Equalization and the Montezuma County Assessor (referred to jointly as the County), and the intervenor, the Property Tax Administrator of the State of Colorado, appeal the judgment of the Montezuma County District Court. The court declared that the possessory interest in, and use of, four parcels of land (the subject land) located within the boundaries of Mesa Verde National Park (the Park) are exempt from taxation and overturned Montezuma County's assessment of property tax against the appellee, the Mesa Verde Company (Mesa Verde). The district court held that (1) section 39–3–135, 16B C.R.S. (1994), which provides for the taxation of exempt property, is facially unconstitutional; and (2) Mesa Verde's interest was exempt from taxation under the limiting provisions of sections 39–3–135(1) and (4)(c).

We reverse the judgment of the district court. We hold that (1) the exemptions authorized pursuant to sections 39–3–135(1) and (4)(c) are contrary to the Colorado Constitution; (2) taxation of Mesa Verde's use and possession of the subject land does not violate the Supremacy Clause of the United States Constitution; and (3) the possessory interest of Mesa Verde in the subject land is taxable pursuant to section 39–3–135(6).

## I.

The subject land, which lies within the boundaries of the Park, is owned in fee simple by the United States. Mesa Verde, a Colorado corporation, operates a concession within the Park which provides commercial facilities and services to the public. Mesa Verde has been operating its concession pursuant to an agreement with the United States since 1937. In 1982, Mesa Verde entered into a written contract with the United States pursuant to which it continues to operate the concession. Under the 1982 contract, Mesa Verde must provide, *inter alia*, lodging, food and beverage services, merchandising, automobile service stations and garages, and transportation within the Park. In turn, the Department of the Interior assigned to Mesa Verde government improvements and certain parcels of land within the Park necessary to Mesa Verde's concession operations. While title to all capital improvements remains in the federal government, this court approved taxation of Mesa Verde's possessory interest in both the capital improvements that it constructed or installed, and in existing government improvements, in *Mesa Verde Co. v. Board of County Comm'rs*, 178 Colo. 49, 495 P.2d 229 (1972).

In August 1989, the County listed, appraised, and assessed an actual value of the use of, and possessory interest in, the land on which Mesa Verde operates its concession within the Park for 1989 property tax purposes.[1] The Assessor valued Mesa Verde's interest in the subject land at $1,837,180 and included that interest in the 1989 property tax assessment roll for Montezuma County. Mesa Verde filed an action in Montezuma

---

1. *See* §§ 39–1–105 to –111, 16B C.R.S. (1994).

County District Court challenging the assessment. While that action was pending, the County assessed Mesa Verde for the 1990 tax year. Mesa Verde then brought a second action. The trial court consolidated the two actions and bifurcated for separate trials the issues of (1) whether the County's attempt to tax Mesa Verde is legal, and (2) the valuation of any taxable right Mesa Verde might be found to possess. The second issue has yet to be tried by the district court.

In its challenge to the County's taxation authority, Mesa Verde claimed that it was exempt from property tax pursuant to sections 39–3–135(1) and (4)(c).[2] The County filed a motion for partial summary judgment, asserting that the property was not exempt from taxation. The County argued that, to the extent sections 39–3–135(1) and (4)(c) established an exemption from taxation applicable to the property, the exemptions violated Article X, sections 3(1)(a), 6, 9, and 10 of the Colorado Constitution. Assuming for purposes of argument that the exemption was not unconstitutional under the cited state constitutional provisions, the County argued that the exemption violated equal protection guarantees under the Colorado and United States Constitutions by imposing a disproportionate tax burden on other taxpayers. Mesa Verde filed a cross-motion for summary judgment, asserting that the property was exempt from taxation pursuant to sections 39–3–135(1) and (4)(c), and further asserting that the County lacked standing to challenge the constitutionality of those statutory provisions.

In May 1991, the district court granted summary judgment to Mesa Verde. The district court found that Mesa Verde does not enjoy a taxable "ownership interest" in the subject land. The district court also held that Mesa Verde's use and possessory interest in the subject land was nevertheless exempt from Colorado property tax under the plain language of sections 39–3–135(1) and 39–3–135(4)(c), and that the actions of the Board and the Assessor were therefore illegal. Further, the district court found that the appellants had no standing to challenge the constitutionality of the statute.

The County appealed the district court's decision to this court. The only issue raised by the County on appeal was the propriety of the district court's ruling that it lacked standing to challenge the constitutionality of sections 39–3–135(1) and (4)(c). In *Mesa Verde Co. v. Montezuma County Board of Equalization*, 831 P.2d 482 (Colo.1992), we affirmed the district court.

After the enactment of section 30–11–105.1, 12A C.R.S. (1994 Supp.), which gave the appellants standing to challenge the constitutionality of section 39–3–135, the County filed a motion to vacate the judgment of the district court.[3] The parties then stipulated

---

2. Sections 39–3–135(1) and (4)(c) state in relevant part:

   (1) Except as otherwise provided in this section, when any real property which is exempt from taxation for any reason is leased, loaned, or otherwise made available to and used by a private individual, association, or corporation in connection with a business conducted for profit, the lessee or user of such real property shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property. Except for exempt real property being operated under a management agreement, this section shall not apply to exempt property furnished by a governmental agency to a contractor as necessary to the considerations of a negotiated contract if such contractor maintains permanent written records substantiating the terms of such contract.

   .  .  .  .  .

   (4)(c) Except for ski recreation area uses assessed pursuant to the provisions of subsection (6) of this section, this section shall not apply

to any real property owned by the United States ..., when the use of such real property is the result of a lease of or a concession in or is relative to the use of a public park, market, fairground, or similar property which is available to the use of the general public....

3. Senate Bill 93–46, effective March 26, 1993, codified at § 30–11–105.1, 12A C.R.S. (1994 Supp.), granted counties and county officers standing to challenge the constitutionality of a statute. Ch. 32, sec. 1, 1993 Colo.Sess.Laws 73. Section 30–11–105.1 provides as follows:

   **Standing—contesting constitutionality of a statute.** In addition to any other powers prescribed in this part 1, any county or county officer shall have standing in district court to defend any action brought against such county or officer by contesting the constitutionality of a statute underlying such action and affecting the rights, status, or other legal relations of such county or county officer or directing the performance of, defining, or prescribing the duties or responsibilities of such county officer.

that the County had standing to challenge the constitutionality of section 39–3–135, and that the County's motion to vacate would be treated as a motion for summary judgment.

Pursuant to the parties' stipulation, the district court entered an order partially vacating its May 1991 order to the extent that it had determined that the appellants lacked standing to challenge the constitutionality of the statute. The district court further stated that "the [May 1991] Order shall remain in full force and effect unless and until this court determines that C.R.S. section 39–3–135 is unconstitutional."

In October of 1993, the district court denied the County's motion for summary judgment and held that Mesa Verde remained entitled to judgment as a matter of law. The district court found that, under *United States v. Colorado*, 627 F.2d 217 (10th Cir.1980), *aff'd sub nom., Jefferson County v. United States*, 450 U.S. 901, 101 S.Ct. 1335, 67 L.Ed.2d 325 (1981), and *Southern Cafeteria, Inc. v. Property Tax Administrator*, 677 P.2d 362 (Colo.App.1983), section 39–3–135 is unconstitutional as applied to users of federally-owned real property because it violates the Supremacy Clause of the United States Constitution. The district court held that neither the subject land nor any alleged interest of Mesa Verde in the subject land is subject to Colorado property taxation and that the County was without authority to tax Mesa Verde's use and possessory interest.

The County thereafter appealed to this court.[4] We now review the following questions:

(1) Whether the [district] court erred in failing to vacate the judgment because the actual value of Mesa Verde's possessory interest is taxable under Colorado law.

(2) Whether the [district] court erred in failing to find the exemptions in 39–3–135(1) and (4)(c) unconstitutional and void but not the entire statute.

(3) Whether the [district] court erred in finding 39–3–135 [to be] in violation of the Supremacy Clause of the United States Constitution.

We reverse the judgment of the district court and hold that Mesa Verde's use and possessory interest in the federal land where its concession is located is subject to the tax imposed by Montezuma County.

## II.

We first determine whether Mesa Verde's use and possession of the subject land owned by the federal government and used by Mesa Verde pursuant to the terms of the concession contract is "real property" subject to property tax under Colorado law. Because we find that it is, we then determine whether Mesa Verde's interest falls under the exemptions from taxation provided in sections 39–3–135(1) and (4)(c) for park concessionaires. We find that it does.

## A.

Mesa Verde contends that neither the subject land nor Mesa Verde's interest in the subject land is "real property" within the meaning of section 39–1–102(14)(a). Mesa Verde asserts that title to the subject land is held by the United States and has not been "acquired from the government of the United States ... or from the state" as required by section 39–1–102(14)(a).

The County maintains that Mesa Verde's possessory interest in the subject land is "real property." Relying upon Article X, Section 10, of the Colorado Constitution,[5] and section 39–1–106, 16B C.R.S. (1994),[6] the

---

4. Pursuant to § 13–4–102(1)(b), 6A C.R.S. (1987 & 1994 Supp.), this court has jurisdiction to determine the constitutionality of § 39–3–135. The United States is not a party to this case.

5. Article 10, section 10, of the Colorado Constitution provides:

All corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal and other purposes, on the real and personal property

owned or used by them within the territorial limits of the authority levying the tax.

6. Section 39–1–106, 16B C.R.S. (1994), provides in pertinent part as follows:

For purposes of property taxation, it shall make no difference that the use, possession, or ownership of any taxable property is qualified, limited, not the subject of alienation, or the subject of levy or distraint....

County contends that the General Assembly enacted section 39–3–135 in order to allow the taxation of a private company with a possessory interest in publicly-owned real property. According to the County, although the United State's fee interest in the Park is exempt, Mesa Verde should not be entitled to ride on the coattails of the government's exemption by the mere fact that it is doing business with the government.

We do not find Mesa Verde's argument persuasive. The United States' interest in the Park is an interest in real property as is Mesa Verde's contractual right to use the subject land. We begin our analysis by examining the relevant statutes.

When interpreting a statute, we first look to the language of the statute itself to discern the intent of the General Assembly. *Rowe v. People*, 856 P.2d 486, 489 (Colo.1993); *State Bd. of Equalization v. American Airlines*, 773 P.2d 1033 (Colo.1989). Where the language of the statute clearly establishes the intent and object of the statute, we need not resort to interpretative rules of statutory construction. *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1076 (Colo.1992). "[T]he statute, in that instance, should be applied as written, since it may be presumed that the General Assembly meant what it clearly said." *Griffin v. S.W. Devanney & Co.*, 775 P.2d 555, 559 (Colo.1989). The statute must also be read as a whole to give effect to its entire policy and objective. *Aulston v. United States*, 915 F.2d 584, 589 (10th Cir.1990), *cert. denied*, 500 U.S. 916, 111 S.Ct. 2011, 114 L.Ed.2d 98 (1991).

In Colorado, all real property, except that which is expressly exempted by law, is subject to *ad valorem* taxation. *See* § 39–1–102(16), 16B C.R.S. (1994). Section 39–1–111 authorizes the board of county commissioners of each Colorado county to impose a property tax annually against all "taxable property" located within the county. "Taxable property" means "all property, real and personal, not expressly exempted from taxation by law." § 39–1–102(16). For purposes of Colorado property tax, real property includes:

[a]ll lands or interests in lands to which title or the right of title has been acquired from the government of the United States or from sovereign authority ratified by treaties entered into by the United States, or from the state[.]

§ 39–1–102(14)(a), 16B C.R.S. (1994).

■ In this instance, we agree with Mesa Verde that title to the Park rests in the United States and thus has not been "acquired from the government of the United States." However, like all federal land, title to this land was nevertheless acquired "from sovereign authority ratified by treaties entered into by the United States, or from the states." Under the plain language of the definition, then, property owned by the United States qualifies as "real property."

This interpretation is consistent with the statute read as a whole. In particular, section 39–3–135 applies to "any *real property* which is exempt from taxation for any reason." (emphasis added). The provision refers to "real property owned by the United States," section 39–3–135(4)(a), (c), and imposes taxes on private interests in such property. § 39–3–135(6). These references imply that the legislature intended the definition of "real property" to include real property owned by the United States.

It is undisputed that Mesa Verde's possessory and usufructuary rights under its concession contract are an "interest in land" under the statute. Thus, we conclude that Mesa Verde's interest qualifies as "real property" subject to property taxation unless otherwise expressly exempted.

B.

■ Mesa Verde next contends that the district court correctly determined that Mesa Verde's possession and use of federally owned land are exempt from property taxation under sections 39–3–135(1) and (4)(c). We agree.

Section 39–3–135 provides for the taxation of real property which would otherwise be exempt:

**39–3–135. Taxation of exempt property—taxes not to become lien.** (1) Except as otherwise provided in this section, when any real property which is exempt from taxation for any reason is leased, loaned,

or otherwise made available to and used by a private individual, association, or corporation in connection with a business conducted for profit, *the lessee or user of such real property shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property.*

§ 39-3-135(1), 16B C.R.S. (1994) (emphasis added). The statute then limits the applicability of this general taxation provision in certain circumstances. The limiting sections relevant here provide:

Except for exempt real property being operated under a management agreement, *this section shall not apply to exempt property furnished by a governmental agency to a contractor as necessary to the considerations of a negotiated contract if such contractor maintains permanent written records substantiating the terms of such contract.* ...

(4)(c) Except for ski recreation area uses assessed pursuant to the provisions of subsection (6) of this section, this section shall not apply to any real property owned by the United States ... *when the use of such real property is the result of a lease of or a concession in or is relative to the use of a public park,* market, fairground, or similar property which is available to the use of the general public....

§ 39-3-135(1), (4)(c) (emphasis added).

In this case, the United States is the fee simple owner of the subject land. The

interest of the United States is exempt from real property taxation by the state or its subdivisions under the Supremacy Clause. *See McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 436, 4 L.Ed. 579 (1819) (a state cannot constitutionally levy a tax directly against the Government of the United States or its property without the consent of Congress). Thus, the taxation of the fee interest in the subject land is unconstitutional and for this reason the land is "real property which is exempt from taxation" and the user of the land is then subject to the general taxation provision of the statute.

Section 39-3-135(1) qualifies the general taxation provision for such property with the phrase "[e]xcept as otherwise provided in this section." The second sentence of section 39-3-135(1) furnishes the first possible limitation on taxation applicable to Mesa Verde. It provides that the "section shall not apply to exempt property furnished by a governmental agency to a contractor as necessary to the considerations of a negotiated contract if such contractor maintains permanent written records substantiating the terms of such contract." Mesa Verde's presence in the Park and use of the subject land is necessary to fulfill its obligations to the United States under its contract. The property used by Mesa Verde for the buildings and operations incident to its concession contract thus falls under this exception.[7]

Section 39-3-135(4)(c) also limits taxation of Mesa Verde's interest. It expressly ex-

---

**7.** This second sentence of section (1) was added to the statute by H.B. 1021 in 1979. *See* ch. 366, sec. 2, 1979 Colo.Sess.Laws 1407. According to the bill's sponsor, Representative Reeves, the bill, as finally enacted, was intended to exempt from state property taxation government contractors (1) who bid on government contracts in competition with contractors from other states, and (2) for whom it was necessary to use public land to perform the obligations under the government contract. *Second Reading of H.B. 1021 Before the House of Representatives,* 52nd Gen. Assembly, 1st Reg.Sess. (Audio Tape M2T-79, 47A, May 14, 1979, at 11:20 a.m.). In particular, the amendment was intended to exempt defense contractors, who provided a significant number of local jobs, in order to make them competitive with contractors from other states which also bid to provide services and products to the federal government. *Id.* The bill also was intended to exempt only such contractors from taxation and not to affect those who were operating under a

"management contract," such as Rockwell Corporation in its management of Rocky Flats. *Id.* It appears that the bill was drafted to leave unaffected management contractors, in part, because a challenge to a state property tax imposed on Rockwell was on appeal in the federal court system at the time. *See* discussion *infra* part III and n. 16.

While Mesa Verde does not fall clearly within the category of contractors exempt from taxation under this section, unlike Rockwell, Mesa Verde has a possessory interest in the federal property indicated by its ownership of the buildings on the property and rights of possession, use, and profits from the property. *See* discussion *infra* part III and n. 16. Thus, the reservation of the right to tax management contractors would not apply to Mesa Verde. Furthermore, the plain language of the provision applies to Mesa Verde's contractual relationship with the United States because Mesa Verde must use the federal property in order to fulfill its obligations under its contract.

empts "*any real property owned by the United States ... when the use of such real property is the result of a ... concession in or is relative to the use of a public park,* market, fairground, or similar property which is available to the use of the general public." § 39–3–135(4)(c) (emphasis added). Mesa Verde is operating a concession, in which it provides commercial facilities and services for the benefit of the public and that are relative to the use of the public park. Thus, we conclude that Mesa Verde's use of the subject land is expressly excepted from taxation under section 39–3–135(4)(c).

## III.

█ We next address whether the limitations created by the second sentence of section 39–3–135(1) and section (4)(c) are constitutional under Article X of the Colorado Constitution. We long have held that the general assembly may not exempt from taxation any property which is not specifically exempted in Article X of the Colorado Constitution. *Denver Beechcraft v. Board of Assessment Appeals,* 681 P.2d 945, 948 (Colo. 1984); *Young Life Campaign v. Board of County Comm'rs,* 134 Colo. 15, 24, 300 P.2d 535, 540 (1956); *Logan Irrigation Dist. v. Holt,* 110 Colo. 253, 257, 133 P.2d 530, 532 (1943). The only qualification to this rule, which bars tax exemptions unless authorized by the Colorado Constitution, is that property owned by the United States government may not be subjected to state taxation under the Supremacy Clause of the United States Constitution. *United States v. Colorado,* 627 F.2d 217 (10th Cir.1980); U.S. Const. art. VI,

§ 2. Accordingly, the limitations provided in sections 39–3–135(1) and (4)(c) are unconstitutional unless the use or possessory interest of concessionaires such as Mesa Verde is exempt from taxation under Article X, or the Supremacy Clause prohibits state taxation of that interest. We find that neither factor applies to the interest exempted under the statute and that the exemption is therefore unconstitutional.

### A.

The County contends that, under Article X, Sections 3(1)(a),[8] 6,[9] 9,[10] and 10,[11] of the Colorado Constitution, Mesa Verde's possessory interest in the subject land is not exempt from an *ad valorem* tax. Thus, the second sentence of section 39–3–135(1) and all of section (4)(c) are unconstitutional.[12] We find the County's argument persuasive.

We agree that possessory interests such as that held by Mesa Verde are not exempted from taxation under the Colorado Constitution. The sole tax exemptions authorized under Article X are as follows:

(1) "household furnishings and personal effects which are not used for the production of income at any time; inventories of merchandise and materials and supplies which are held for consumption by a business or are held primarily for sale; livestock; agricultural and livestock products; and agricultural equipment which is used on the farm or ranch in the production of agricultural products," Colo. Const. art. X, § 3;

(2) "ditches, canals and flumes" under certain circumstances, *id.;*

8. Article X, section 3, of the Colorado Constitution provides in pertinent part:

(1)(a) Each property tax levy shall be uniform upon all real and personal property not exempt from taxation under this article located within the territorial limits of the authority levying the tax.

9. Article X, section 6, of the Colorado Constitution expressly states that "[a]ll laws exempting from taxation property other than that specified in this article shall be void."

10. Article X, section 9, of the Colorado Constitution provides that "[t]he power to tax corpora-

tions and corporate property, real and personal, shall never be relinquished or suspended."

11. Article X, section 10, of the Colorado Constitution provides:
All corporations in this state, or doing business therein, shall be subject to taxation for state, county, school, municipal and other purposes, on the real and personal property owned or used by them within the territorial limits of the authority levying the tax.

12. The County also makes equal protection and uniform taxation arguments which we do not address because we dispose of this case on the state constitutional grounds discussed in the text above.

(3) "the property, real and personal, of the state, counties, cities, towns and other municipal corporations and public libraries," *id.* § 4;

(4) "property, real and personal, that is used solely and exclusively for religious worship, for schools or for strictly charitable purposes" and cemeteries under certain circumstances, *id.* § 5; and

(5) moveable equipment for which a graduated specific ownership tax must be assessed in lieu of ad valorem taxation, *id.* § 6.

Clearly, the limitations on taxation of the use and possession of federal land under sections 39–3–135(1) and (4)(c) fall into none of these categories of exemptions authorized under the Colorado Constitution. Furthermore, sections .9 and 10 of Article X specifically proscribe the legislative power "to impair the financial base of government operations" by exempting corporate bodies, such as Mesa Verde, from their share of taxation. *Allardice v. Adams County,* 173 Colo. 133, 158, 476 P.2d 982, 995 (1970); *see also* Colo. Const. art. X, §§ 9, 10. Accordingly, we hold that the limitations under the second sentence of section 39–3–135(1) and section (4)(c) are not authorized by Article X and, for that reason, they violate the Colorado Constitution.

### B.

We now turn to the question of whether the taxation of a private party's use and possessory interest in federal land, which is limited under section 39–3–135(1) and (4)(c), is contrary to the Supremacy Clause. The Supreme Court has addressed the constitutionality of the taxation of private interests in federally owned property in a series of cases. In these cases, the Court consistently has held that state taxation of the use or possessory interest of private parties in property owned by the United States does not violate the Supremacy Clause.

In three companion cases decided on the same day, *United States v. City of Detroit,* 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958), *United States v. Township of Muskegon,* 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958), and *City of Detroit v. Murray Corp. of America,* 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441 (1958), the United States Supreme Court upheld the constitutionality of Michigan statutes which imposed taxes on the use of government property by private entities. The tax at issue in *Detroit* and *Muskegon* was imposed pursuant to a statute providing that, when tax-exempt real property is used by a private party in a business conducted for profit, that party is subject to taxation to the same extent as though the party owned the property. Both *Detroit* and *Muskegon* involved Department of Defense contractors occupying defense plants. In *Detroit,* the contractor held a lease for a term of years; and in *Muskegon* the contractor had a permit which could be terminated at will. In *Murray,* the relevant statute provided that "the owners or persons in possession of any personal property shall pay all taxes assessed thereon...." Murray was the subcontractor of an Air Force prime contract. Murray's subcontract provided that, if it had received a progress payment, title to all inventory and materials upon acquisition by Murray would vest directly in the government. The tax was imposed on all of the inventory and work in the possession of Murray.

In each case, the United States challenged the constitutionality of the statute, arguing that it imposed a tax on property belonging to the United States. The Supreme Court found in each case that the taxing authorities acting pursuant to the Michigan statutes, "were careful not to attempt to tax the Government's interest in the property." *Murray,* 355 U.S. at 494, 78 S.Ct. at 461; *see also Detroit,* 355 U.S. at 469, 78 S.Ct. at 476; *Muskegon,* 355 U.S. at 486, 78 S.Ct. at 485. Thus, the Court held that the statutes did not authorize unconstitutional taxation of federal property by the states and upheld the taxes.

In *United States v. County of Fresno,* 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977), the Supreme Court upheld a California tax on the possessory interests of the United States Forest Service employees in their use of government-owned housing located in national forests in California. The measure of

the tax was "the annual estimated fair rental value of the houses, discounted to take into account essentially the same factors considered by the Forest Service in computing the amount that it deducted from the salaries of employees who used the houses." *Id.* at 456, 97 S.Ct. at 701–02.

In upholding the constitutionality of the statute under the Supremacy Clause, the Supreme Court found dispositive the fact that the statute taxed only the value of the user's interest and not any interest attributable to the United States:

> At oral argument the Government conceded that a state income tax could be imposed on the employees for the value of the occupancy—thus conceding that its value to the employee is capable of being severed from its value to the Forest Service and of being accurately measured.... Here, both appellees have sought to ... tax the employees only on the portion of the total value of the houses which may be properly attributed to *their* possessory interest.

*Id.* at 466, 97 S.Ct. at 706 (emphasis in original).

In *United States v. New Mexico,* 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982), the Court addressed the question of whether a gross receipts tax on the use of government property and a sales tax imposed on purchases made from a government account by a research contractor violated the Supremacy Clause. In upholding the taxes, the Court reviewed its prior decisions and held that they precluded state taxation in only one circumstance: "when the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned." *Id.* at 735, 102 S.Ct. at 1383.

Taken as a whole, then, *Fresno, Detroit, Muskegon, Murray,* and *New Mexico* hold that the federal government's constitutional immunity from state taxation is not infringed when a state imposes a tax on private corporations and they are entities independent of the United States using the property in connection with their own commercial activities for profit-making. In such circumstances, the "tax on them cannot be viewed as a tax on the United States itself." *New Mexico,* 455 U.S. at 738, 102 S.Ct. at 1385.

Applying the rule set out in these cases, we find that the taxation of the use or possessory interest of private parties in property owned by the United States, which is excluded under sections 39–3–135(1) and (4)(c), cannot be termed a tax on the United States contrary to the Supremacy Clause. Since this interest is neither exempted under Article X of the Colorado Constitution, nor contrary to the Supremacy Clause, we hold that the second sentence of section 39–3–135(1) and all of section (4)(c) are unconstitutional under Article X of the Colorado Constitution as applied to limit taxation of the use and possession of federal property by private entities in certain circumstances.

## IV.

■ In the absence of the limitations under the second sentence of section 39–3–135(1) and section (4)(c), Mesa Verde maintains that it is unconstitutional to tax its possessory interest in the subject land pursuant to the particular terms of the general taxing provision of section 39–3–135(1). Mesa Verde agrees with the district court that under *United States v. Colorado,* 627 F.2d 217, and *Southern Cafeteria,* 677 P.2d 362, "section 39–3–135 as applied to a private use of federally-owned real property violates the Supremacy Clause of the United States Constitution and is void in its entirety." Even if the entire section were not void, Mesa Verde contends that this interest could not be taxed under section 39–3–135(6) because the section is applicable only to recreational uses of the land, such as ski areas.[13] We disagree.

---

**13.** Specifically, the district court read *Colorado* and *Southern Cafeteria* as holding that the entire section 39–3–135 was unconstitutional on its face because it requires the taxation of federal inter- ests in real property to the same extent as though the private users were the owners of the property and thus, in effect, taxes the interest of the Unit-

*Colorado* and *Southern Cafeteria* addressed the constitutionality of taxation of a federal contractor pursuant to section 39-3-112(1), 16 C.R.S. (1976 Supp.), an antecedent version of section 39-3-135 at issue here.[14] In *Colorado*, the county had imposed a tax pursuant to section 39-3-112(1) on the Rockwell Corporation based on the full value of the Rocky Flats plant. Rockwell was operating the plant under a management contract with the United States. The trial court found that the tax was, in reality, a tax on property owned by the United States. As such, the court held that the tax infringed on the immunity of the United States from the imposition of local taxes on government property and thus, that the Colorado statute was unconstitutional as applied to Rockwell. *United States v. Colorado*, 460 F.Supp. 1184 (D.Colo.1978). The Tenth Circuit affirmed and held that, under the Colorado statute, "the 'substance' of the present procedure is not to tax Rockwell's 'use' of government owned property, but to lay an ad valorem general property tax on property owned by the United States." *Colorado*, 627 F.2d at 221. The Supreme Court then affirmed per curiam in *Jefferson County*, 450 U.S. 901, 101 S.Ct. 1335.

In *Southern Cafeteria*, the taxpayer was a concessionaire operating a food service at the Denver Federal Center under a standard general services administration contract.

Under the contract, the federal government provided the equipment necessary for the operation and the fixtures and real property used by the taxpayer in the course of its operation of the food service. The Colorado Court of Appeals relied on *Colorado*, and found that the concessionaire, operating on federally owned land and under a contract with the federal government, was not subject to an *ad valorem* property tax under section 39-3-112(1). *Southern Cafeteria*, 677 P.2d 362.

However, neither *Colorado* nor *Southern Cafeteria* held that section 39-3-112(1) was facially unconstitutional, as Mesa Verde asserts and the district court suggests. Both cases recognized that the use and possession of federal land by a private party is taxable by the state. *See Colorado*, 627 F.2d at 221; *Southern Cafeteria*, 677 P.2d at 365. These cases held only that section 39-3-112(1) was unconstitutional as applied because the County did not limit the tax to the *use* of the property and failed to segregate private from federal interests. *Colorado*, 627 F.2d at 221; *see Southern Cafeteria*, 677 P.2d at 365.

Even if these cases had held that section 39-3-112(1) was facially unconstitutional to the extent that it required taxation of federally owned property, neither case would be persuasive in this instance because, contrary to the interpretation of the district court and Mesa Verde, *Colorado* and *Southern Cafete-*

ed States. The district court distinguished *Fresno*, 429 U.S. 452, 97 S.Ct. 699, as follows:

> Defendants cite *Fresno* as authority for the constitutionality of C.R.S. section 39-3-135 as applied to users of federal land; in fact, *Fresno* confirms that C.R.S. section 39-3-135 cannot be constitutionally applied to users of federal land. The *Fresno* statute survived constitutional scrutiny precisely because it avoided the fatal flaw of C.R.S. 39-3-135. *Fresno* affirms that C.R.S. 39-3-135 violates the Supremacy Clause because it taxes the full value of the United States' ownership interest.

However, the district court did not address why the limitations placed on the general taxing provision, such as section (6), did not apply and act to cure this "fatal flaw" under the facts of this case. Nor did it address whether these provisions were severable from any unconstitutional portions of the statute.

**14.** Section 39-3-112(1) provided in pertinent part:

> When any real property which for any reason is exempt from taxation is leased, loaned, or

otherwise made available to and used by a private individual, association or corporation in connection with a business conducted for profit, the lessee or user thereof shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property....

In April 1989, the General Assembly repealed and reenacted section 39-3-112, 16B C.R.S. (1982), as section 39-3-135. *See* ch. 325, sec. 1, 1989 Colo.Sess.Laws 1470, 1480 (H.B. 1098). Pertinent amendments to the statute since the time *Colorado* was decided are the addition of the limitations on taxation under the second sentence of 39-3-135(1) and section (4)(c). *See* ch. 366, sec. 2, 1979 Colo.Sess.Laws 1407 (H.B. 1021); ch. 367, sec. 2, 1979 Colo.Sess.Laws 1409 (H.B. 1531). The 1989 amendment also changed section (6) to provide for valuation and taxation of the possessory interest of for-profit lessees or permittees for recreational purposes instead of taxation of this interest based on the amount of fees paid to the United States. *See* ch. 325, sec. 1, 1989 Colo.Sess.Laws 1470, 1480.

*ria* addressed only the constitutionality of the general taxation provision of subsection 39–3–112(1), not the section as a whole. The limitations on the general taxation provision under the second sentence of section 39–3–135(1) and in section 4(c) were not enacted until after the property tax assessments challenged in *Colorado* and *Southern Cafeteria* were imposed. *See* ch. 366, sec. 2, 1979 Colo.Sess.Laws 1407; ch. 367, sec. 2, 1979 Colo.Sess.Laws 1409. Nor were any of the limiting provisions of the statute in effect at that time applicable to either Rocky Flats or the Denver Federal Center. In fact, the district court in *Colorado* recognized that taxation of lands "used for recreational purposes" pursuant to section 39–3–112(6) did not suffer the same constitutional flaw as the general taxation provision, section 39–3–112(1). *See* 460 F.Supp. at 1189 n. 1.

We find that, in this case, section 39–3–135(6),[15] cures any constitutional defect identified in *Colorado* and *Southern Cafeteria* by allowing taxation of only the possessory interest in real property owned by the United States.[16] Under the plain language of the statute, taxation of Mesa Verde's use and possessory interest in the subject land is authorized by section 39–3–135(6). Section 39–3–135(6) provides:

> The possessory interest, and only the possessory interest, of the lessee or permittee of lands owned by the United States and leased or permitted for use for recreational purposes in connection with a business conducted for profit shall be subject to property tax pursuant to the provisions of this section.

§ 39–3–135(6). In this instance, Mesa Verde's use of the land pursuant to its con-

tract with the United States falls under this provision because (1) it is incidental to the recreational use of the park by the public, and (2) Mesa Verde conducts its business for profit. Thus, we find that section 39–3–135(6) provides the County with statutory authority to tax Mesa Verde's use and possession of the subject land.

We recognize that section 39–3–135(4)(c) explicitly excludes ski recreation areas from its ambit and specifies that they are subject to taxation pursuant to section 39–3–135(6). However, two considerations lead us to conclude that section (6) was not intended to apply strictly to ski areas and would apply in circumstances where section (4)(c) does not apply. First, unlike the exclusionary phrase in section (4)(c), section (6) does not refer specifically to "ski recreation areas." Instead, it refers to "lands ... leased or permitted for use for recreational purposes in connection with a business conducted for profit." This use of generally applicable terms indicates that the legislature intended for this section to be potentially applicable to for-profit private users of federal land other than ski areas. Second, the clause excluding ski areas in section (4)(c) indicates the legislature's recognition that the language of the two sections could apply both to users such as park concessionaires excluded under section (4)(c) and to ski areas. Accordingly, we find that in the absence of the limitation on taxation of federal land pursuant to section (4)(c), section (6) governs the taxation of Mesa Verde's interest.

Thus, we find that the County was authorized to tax Mesa Verde's possessory interest in the subject land pursuant to section 39–3–135(6). Since this section properly autho-

15. § 39–3–112(6) was substantially similar to the current provision, § 39–3–135(6). However, instead of individually valuing and taxing the possessory interest in federal lands as under § 39–3–135(6), it taxed the value of "thirty percent of the fees paid by the user of said lands to the United States for the use thereof in the previous calendar year." § 39–3–112(6), 16 C.R.S. (1975 Supp.).

16. We note that the United States did not challenge the imposition of a property tax on Mesa Verde's possessory interest in federal land in this case as it did the property tax imposed in *Colorado*. The United States was initially joined as an involuntary plaintiff in this case but was dismissed on its own motion. As grounds for its dismissal, the United States argued that:

> [t]he ability or inability of a local taxing authority to tax a private corporation's property interests, if any, arising out of a contract between the United States and a private corporation does not affect any substantial interest, right or property ownership of the United States.

It then cited *Colorado* for the proposition that the "United States is immune from local and state taxes."

rizes only taxation of the use and possessory interest of a private party in federal land, we also reverse the district court's holding that section 39–3–135 is unconstitutional in its entirety.[17]

## V.

In summary, we find that the exemption of Mesa Verde's possessory interest in the Park from property taxation under the second sentence of section 39–3–135(1) and section (4)(c) is unconstitutional under Article X of the Colorado Constitution. We also find that Mesa Verde's possessory interest in the subject land remains taxable under section 39–3–135(6). Under this analysis, we hold that Mesa Verde's possessory interest is taxable property and was properly included on Montezuma County's tax rolls. Because we reverse the summary judgment entered by the district court and hold that Mesa Verde's use and possessory interest in the subject land is taxable, we remand this case to the district court for resolution of Mesa Verde's additional claims[18] and for the valuation of Mesa Verde's interest.

VOLLACK, J., dissents, and ERICKSON, J., joins in the dissent.

Justice VOLLACK dissenting:

The majority reverses the judgment of the Montezuma County District Court and holds that Mesa Verde Company's (Mesa Verde) use of and possessory interest in the Mesa Verde National Park (the Park) where its concession is located is subject to the tax imposed by Montezuma County. Maj. op. at 4. Specifically, the majority holds that (1) the exemptions authorized pursuant to sections 39–3–135(1) and (4)(c), 16B C.R.S. (1994), are contrary to the Colorado Constitution; (2) taxation of Mesa Verde's use and possession of the subject land does not violate the Supremacy Clause of the United States Constitution; and (3) the possessory interest of Mesa Verde in the subject land is taxable pursuant to section 39–3–135(6), 16B C.R.S. (1994). Maj. op. at 2.

I dissent because I do not believe that Mesa Verde's possessory interest in the federal land where its concession is located is taxable. First, I disagree that the exemptions created by sections 39–3–135(1) and (4)(c) are unconstitutional as applied under Article X of the Colorado Constitution so as to limit taxation of the use and possession of federal property by private entities in certain circumstances. Maj. op. at 7. Additionally, I do not agree with the majority that taxation of Mesa Verde's use and possession of the subject land does not violate the Supremacy Clause of the United States Constitution. Finally, I disagree that Mesa Verde's use of the subject land pursuant to its contract with the United States falls under section 39–3–135(6) and that the County was authorized to tax Mesa Verde's possessory interest in the

**17.** Because we find Mesa Verde's interest to be taxable under § 39–3–135(6), we need not address whether the first sentence of § 39–3–135(1), standing alone, would survive constitutional scrutiny under the Supremacy Clause as applied in this circumstance. However, as discussed earlier, the Supreme Court upheld a substantially identical taxing provision in *Detroit*, 355 U.S. 466, 78 S.Ct. 474, and *Muskegon*, 355 U.S. 484, 78 S.Ct. 483. For purposes of clarifying any apparent inconsistency between these cases and *Colorado* and *Southern Cafeteria*, we note that these cases are distinguishable from, and thus not inconsistent with, *Detroit* and *Muskegon*. Unlike the private entities in *Detroit* and *Muskegon*, Rockwell and Southern Cafeteria merely operated the properties in question for a fee in the government's stead, and did not use the property as part of a separate private enterprise. Thus, the two could not "realistically be viewed as separate entities [from the federal government], at least insofar as the activity being

taxed is concerned." *New Mexico*, 455 U.S. at 735, 102 S.Ct. at 1383.

We also note that because Mesa Verde's possessory interest meets the definition of taxable property under § 39–1–102(16), even if Mesa Verde's interest were not taxable under any provision of § 39–3–135, it is taxable under § 39–1–111. Section 39–1–111 authorizes the imposition of property taxes against all "taxable property" in a county. *See* discussion *supra*, Part II.A.

**18.** Mesa Verde additionally claims that defendants failed to properly notify Mesa Verde of their actions in valuing the subject land and adding the subject land to the assessment roll; and that the County's actions have denied Mesa Verde substantive and procedural due process. The trial court did not consider these claims, but rather entered summary judgment on grounds that section 39–3–135 was facially unconstitutional and, thus, the County was without statutory authority to tax Mesa Verde's interest.

subject land under that section. Maj. op. at 11.

I would therefore affirm the district court's ruling that Mesa Verde is not subject to taxation under section 39-3-135. Additionally, I would reverse the district court's ruling that section 39-3-135 is unconstitutional as applied and violates the Supremacy Clause of the United States Constitution.

## I.

The majority accurately sets forth the facts and procedural history of this case. I agree with the majority that Mesa Verde's possessory interest in the subject federal land qualifies as real property subject to property taxation unless it is otherwise expressly exempted. Maj. op. at 5. I also agree that Mesa Verde's use of the subject land, owned by the United States, is expressly excepted from property taxation under sections 39-3-135(1) and (4)(c). Maj. op. at 4, 5.

## II.

I first address the majority's holding that the exemptions created by sections 39-3-135(1) and (4)(c), 16B C.R.S. (1994),[1] are unconstitutional under Article X of the Colorado Constitution and that Mesa Verde is subject to taxation under Article X of the Colorado Constitution. Maj. op. at 7.

I disagree with the majority that it is unnecessary to address the appellants' equal protection and uniform taxation arguments

1. Sections 39-3-135(1) and (4)(c), 16B C.R.S. (1994), state in relevant part:
    (1) Except as otherwise provided in this section, when any real property which is exempt from taxation for any reason is leased, loaned, or otherwise made available to and used by a private individual, association, or corporation in connection with a business conducted for profit, the lessee or user of such real property shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property....
        ....
    (4)(c) Except for ski recreation area uses assessed pursuant to the provisions of subsection (6) of this section, this section shall not apply to any real property owned by the United States ..., when the use of such real property is the result of a lease of or a concession in or

since "[the majority] disposes of this case on the state constitutional grounds." See maj. op. at 7, n. 12. Specifically, the appellants[2] claim that sections 39-3-135(1) and 4(c) are unconstitutional in that those sections create exemptions that violate the Equal Protection Clauses of both the Colorado and the United States Constitution and the uniformity of taxation clause of Article X, Section 3, of the Colorado Constitution.[3] In my view, the majority fails to see that the appellants' Article X argument is based on both equal protection and uniformity of taxation grounds.

Article X, section 3, implies equality in the burden of taxation, and requires that all taxes be uniform upon the same class of subjects. *Denver Urban Renewal Auth. v. Byrne,* 618 P.2d 1374 (Colo.1980). Under the "uniformity of taxation" clause, the General Assembly is permitted to classify real and personal property for purposes of taxation. To secure uniformity in taxation, "all persons who are members of any class, or all property logically belonging in a given classification, [must] receive equal treatment to that accorded all other persons or property in the same class." *District 50 Metro. Recreation Dist. v. Burnside,* 167 Colo. 425, 430, 448 P.2d 788, 790 (Colo.1968).

In determining the validity of Colorado tax legislation under the uniformity of taxation clause of the Colorado Constitution and the Equal Protection Clauses of both the Colorado Constitution and the United States Constitution, this court has applied the following standard:

> is relative to the use of a public park, market, fairground, or similar property which is available to the use of the general public....

2. I refer to the Montezuma County Board of Equalization (the Board), the Montezuma County Assessor (the Assessor), and the intervenor, the Property Tax Administrator of the State of Colorado (the Administrator), collectively as the appellants.

3. Article X, Section 3, of the Colorado Constitution provides in pertinent part:

    (1)(a) Each property tax levy shall be uniform upon all real and personal property not exempt from taxation under this article located within the territorial limits of the authority levying the tax.

[T]he legislature may make classifications in the area of taxation so long as the classification is a reasonable one and not palpably arbitrary. If the classification conceivably rests upon some reasonable considerations of difference or policy, there is no constitutional violation. The burden is therefore on the one attacking the classification to negative every conceivable basis which might support it, at least where no fundamental right is imperiled.

*American Mobilehome Ass'n, Inc. v. Dolan,* 191 Colo. 433, 438, 553 P.2d 758, 762 (Colo. 1976) (citations omitted).

Under this standard, the appellants bear the burden of showing that no conceivable basis supports the different classifications present in section 39–3–135. The appellants have neither offered any explanation why the classifications lack a reasonable basis nor identified any facts that support their uniformity/equal protection arguments.

*Marquardt Corp. v. Weber County,* 360 F.2d 168 (10th Cir.1966), involved a Utah use tax statute that imposed a tax upon

"the possession or other beneficial use enjoyed by any private individual ... of any property ... which for any reason is exempt from taxation, when such property is used in connection with a business conducted for profit, except where the use is by way of a concession in or relative to the use of a public airport, park, fairground, or similar property which is available as a matter of right to the use of the general public."

*Id.* at 170 (quoting Utah Code Ann. § 59–13–73 (1953)).

Based upon the Utah statute, the Weber County Assessor assessed a use tax upon two corporations using federal land in connection with the performance of contracts with the United States Air Force. In upholding the constitutionality of the Utah statute, the Tenth Circuit Court of Appeals held:

Since the tax is laid on the private use for profit of "any property ... which for

any reason is exempt from taxation", the statute cannot be said to be unconstitutionally discriminatory on its face unless the exceptions make it so. Certainly, the exception relating to use by or for the exclusive benefit of religious, educational or charitable organizations is not discriminatory in any respect. The same is true of the beneficial use of public lands, state or federal. It has been suggested that the exception granted concessions in airports, parks and fairgrounds may be discriminatory since the state or its political subdivisions are most likely to own the property used by these concessions. But, we cannot discern any inherent discrimination in the exemption of concessions in public places....

*Id.* at 172 (citations omitted).

Turning now to the facts of this case, Mesa Verde is operating its concession, through which it provides commercial facilities and services for the benefit of the public, pursuant to the terms of a contract entered into with the United States. Mesa Verde's presence in the Park results solely from its obligations to the United States under its contract, and any use that Mesa Verde makes of the subject land occurs only because the United States has furnished the subject land as necessary to the considerations of the contract. The United States is the fee simple owner of the subject land. The United States, as the fee owner of the real property, is tax-exempt.[4] According to the language of the statute, if Mesa Verde is going to be taxed the same as the United States, then Mesa Verde would also be tax-exempt.

I hold that Mesa Verde is not subject to property taxation under section 39–3–135. Further, I hold that the exemption created in section 39–3–135(4)(c) is reasonable and valid because it is founded upon the well-recognized policy that the United States is exempt from taxation. In my judgment, the appellants' Article X argument fails because the United States owns a fee interest in the

---

**4.** It is undisputed that the fee interest of the United States is exempt from real property taxation. *See United States v. City of Detroit,* 355 U.S. 466, 469, 78 S.Ct. 474, 476, 2 L.Ed.2d 424 (1958) (citing *McCulloch v. Maryland,* 17 U.S. (4

Wheat.) 316, 4 L.Ed. 579 (1819)) ("[A] State cannot constitutionally levy a tax directly against the Government of the United States or its property without the consent of Congress.").

subject land.[5] I therefore conclude that the concession exemption does not discriminate unconstitutionally against the United States or its users or lessees. *See Chrysler Corp. v. Township of Sterling,* 410 F.2d 62, 71 (6th Cir.1969) ("[T]he exemption of 'a concession in or relative to the use of a public airport, park, market, fair ground or similar property' is not unconstitutionally discriminatory against the United States.").

In the absence of a specific statute authorizing the taxation of Mesa Verde's possessory interest in the subject land, Montezuma County is powerless to tax Mesa Verde's possessory interest; the fact that the legislature could constitutionally tax a non-owner does not empower the county to assess the non-owner.[6] *See United States Transmission Systems, Inc. v. Board of Assessment Appeals,* 715 P.2d 1249 (Colo.1986); *City and County of Denver v. Security Life and Accident Co.,* 173 Colo. 248, 477 P.2d 369 (Colo. 1970). The Board of Examiners may not therefore levy and collect property taxes against property that does not meet the definition of "taxable property" under section 39–1–102(16).[7]

### III.

I now turn to the majority's conclusion that taxation of Mesa Verde's use and possession of the subject land, which is excluded under sections 39–3–135(1) and (4)(c), cannot be considered a tax on the United States in violation of the Supremacy Clause of the United States Constitution. Maj. op. at 9.

The Montezuma County District Court found that, under *United States v. Colorado,* 627 F.2d 217 (10th Cir.1980), *aff'd,* 450 U.S. 901, 101 S.Ct. 1335, 67 L.Ed.2d 325 (1981), and *United States v. County of Fresno,* 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977), section 39–3–135 is unconstitutional *as applied* to users of federally owned real property because it violates the Supremacy Clause of the United States Constitution.[8]

In its challenge here, Mesa Verde argues that, based upon *United States v. Colorado,* 627 F.2d 217 (10th Cir.1980) (the *Rockwell* case), the appellants cannot rely upon section 39–3–135 to tax Mesa Verde's interest because the statute is facially unconstitutional.[9]

---

5. The power to tax is vested in the legislature, and the assessment of an *ad valorem* tax is subject only to limitations imposed by the Colorado Constitution and the United States Constitution. *Bartlett & Co. v. Board of County Comm'rs,* 152 Colo. 388, 382 P.2d 193 (1963). By taxing Mesa Verde's possessory interest, the majority, in effect, is taxing the United States' fee interest in violation of the Supremacy Clause. In holding that the exemptions created in § 39–3–135(1) and § 39–3–135(4)(c) violate the Colorado Constitution, the majority has given the appellants statutory authority to implement a tax that is less than the United States' total fee interest in the property. The legislature has made such exception only as it applies to ski areas, under § 39–3–135(6), 16B C.R.S. (1994), and it has not yet seen fit to expand that exception to park lands.

6. I recognize that the Colorado General Assembly could tax the interests of Mesa Verde if it so desired. Other states, like California and Michigan, have possessory interest and use taxes that could conceivably reach Mesa Verde. *See United States v. County of Fresno,* 50 Cal.App.3d 633, 123 Cal.Rptr. 548 (Cal.App.1975), *aff'd,* 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977); *City of Detroit v. Murray Corp. of America,* 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441 (1958). In *Murray Corp.,* Justice Harlan pointed out that

a state may not constitutionally tax property owned by the Federal Government, even though the property is in private hands and the tax is to be collected from a private taxpayer, but it may tax activities of private persons, even though these activities involve the use of government property and the value or amount of such property becomes the partial or exclusive basis for the measurement of the tax. *Id.* at 505–06, 78 S.Ct. at 492 (Harlan, J., concurring) (citation omitted).

7. Under § 39–3–105, the assessor is authorized to list, appraise, and value real property *that is* exempt under article 3 of title 39, 16B C.R.S. (1994), or is otherwise exempt and also taxable under § 39–3–135(1).

8. The majority asserts that the Montezuma County District Court found § 39–3–135 "unconstitutional under the Supremacy Clause and 'void in its entirety,' " maj. op. at 9, 9 n. 13, and accordingly does not address the district court's Supremacy Clause analysis. Contrary to this assertion, the district court made no such finding.

9. In its briefs before this court, Mesa Verde states that the statute was declared unconstitutional in *Rockwell.* Mesa Verde has confused the holding of this case. Rather, *Rockwell* held that the statute was unconstitutional *as applied.*

Mesa Verde contends that the statute is unconstitutional because it requires the user to be taxed as though it were the owner of the property.

My review of the United States Supreme Court case law leads me to conclude that section 39–3–135 is constitutional and does not violate the Supremacy Clause.

In three companion cases decided on the same day, *United States v. City of Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958) (the *Borg–Warner* case), *United States v. Township of Muskegon*, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958) (the *Continental* case), and *City of Detroit v. Murray Corp. of America*, 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441 (1958) (*Murray*), the United States Supreme Court upheld the constitutionality of a Michigan statute. The statute, substantially similar to the statute at issue here, provided that, when tax-exempt real property is used by a private party in a business conducted for profit, that party is subject to taxation to the same extent as though the party owned the property, "except where the use is by way of a concession in or relative to the use of a public airport, park, market, fairground, or similar property." *Borg–Warner*, 355 U.S. at 468 n. 1, 78 S.Ct. at 475 n. 1.[10] The Supreme Court found that the Michigan statute, on its face and as applied, did not violate the constitutional immunity of federal property from taxation by the states. *Id.* at 472–73, 78 S.Ct. at 477–78.

In my view, the Michigan cases are controlling authority on the constitutionality of section 39–3–135. Given that the Supreme Court upheld the constitutionality of the Michigan statute, which is substantially similar to ours, I conclude that the exemptions created in section 39–3–135 are constitutional.

In *Rockwell*, the United States brought a declaratory judgment action, arguing that the tax assessed and levied under the authority of section 39–3–112[11] was really a tax on property owned by the United States, which violated the Supremacy Clause of the United States Constitution.

The Rocky Flats nuclear plant included approximately 6,500 acres of land and approximately ninety-five buildings and structures owned in fee simple by the United States. The plant was operated to develop and produce nuclear weapons for national defense. Rockwell International Corporation operated and managed the Rocky Flats nuclear plant under a management contract with the United States in which Rockwell was paid a fixed annual fee (profit) for its services. The federal government provided all the funds necessary to operate the plant, owned all tangible personal property used in the operation of the plant, and owned all of the real property used in the production

---

10. Both Borg–Warner and Continental were Department of Defense contractors occupying defense plants—Borg–Warner, under a lease for a term of years; and Continental, under a permit which could be terminated at will. The United States challenged the constitutionality of the statute, arguing that it imposed a tax on property belonging to the United States. In each of these cases, the taxpayer held a possessory interest in property, the title to which was in the federal government.

In *Murray*, a tax was imposed on inventory and work in the possession of Murray, the subcontractor of an Air Force prime contract. Murray's subcontract provided that, if it had received a progress payment, title to all inventory and materials upon acquisition by Murray would vest directly in the government. The tax had been imposed under an *ad valorem* personal property tax. The United States Supreme Court sustained the tax. The Supreme Court considered this case to be controlled by its decisions in the *Borg–Warner* and *Continental* cases.

11. Section 39–3–112(1), 16B C.R.S. (1982), the predecessor statute to § 39–3–135, provided in pertinent part:

> When any real property which ... is exempt from taxation is leased, loaned, or otherwise made available to and used by a ... corporation in connection with a business conducted for profit, the lessee or user thereof shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property....

In April 1989, the General Assembly repealed and reenacted § 39–3–112, 16B C.R.S. (1982), as § 39–3–135. Act approved Apr. 23, 1989, ch. 325, sec. 1, 1989 Colo.Sess.Laws 1470, 1480 (House Bill No. 1098). The present case is governed by the later statute. The two sections are substantially identical; the significant statutory modifications made to § 39–3–135, however, include the opening language in § 39–3–135(1), which states "[e]xcept as otherwise provided in this section" and additional subsection (4)(c).

process. To the extent that any property taxes were due from Rockwell, the United States was obligated by its contract to provide funds for payment thereof. In the contract, the charge was defined as a cost to be borne by the United States.

In 1976, the Jefferson County Assessor notified Rockwell that it was a user of exempt property within the meaning of section 39–3–112 and assessed Rockwell for 1976 property taxes on its right to use the property. Pursuant to the language of the statute, the Jefferson County Assessor subjected Rockwell to "taxation 'in the same amount and to the same extent' as if it [the user] were the owner of the property" by assigning to Rockwell's interest an actual value equal to the actual value of the property owned by the United States. *United States v. Colorado,* 460 F.Supp. 1184, 1188 (D.C.Colo.1978), *aff'd* 627 F.2d 217 (10th Cir.1980).

In *United States v. Colorado,* 460 F.Supp. 1184 (D.C.Colo.1978), the trial court concluded that the tax imposed on Rockwell, acting under a management contract with the United States, was in reality a tax on property owned by the United States. As such, the court held that the tax infringed on the immunity of the United States from the imposition of local taxes on government property and thus, that the Colorado statute was unconstitutional as applied.

The Tenth Circuit affirmed in *Rockwell.* The Tenth Circuit concluded that, under the Colorado statute, "the 'substance' of the present procedure is not to tax Rockwell's 'use' of government owned property, but to lay an *ad valorem* general property tax on property owned by the United States." *Rockwell,* 627 F.2d at 221.

In *Southern Cafeteria, Inc. v. Property Tax Administrator,* 677 P.2d 362 (Colo.App. 1983), the taxpayer was a concessionaire operating a food service at the Denver Federal Center under a standard general services administration contract. Under the contract, the federal government provided the equipment necessary for the operation and the fixtures and real property used by the taxpayer in the course of its operation of the food service. The court of appeals found that the concessionaire, operating on federal-

ly owned land and under a contract with the federal government, was not subject to an *ad valorem* property tax under section 39–3–112(1), 16B C.R.S. (1982). In making this determination, the court of appeals found the *Rockwell* case to be controlling:

> We see no distinction between paying Rockwell a fixed profit and fixing a ceiling on Southern Cafeteria's profits on its own operation. Both Rockwell and the [concessionaire] here operated a profit-making business pursuant to contracts with the federal government, on real property owned by the government. The United States District Court in the *Rockwell* case held that the tax assessment failed to identify or separate the government's ownership interest from Rockwell's beneficial use of the property, and by thus failing to limit the tax to Rockwell's interest, the tax amounted to nothing less "than a general ad valorem property tax imposed on United States property." The tax was on the property itself rather than on Rockwell's beneficial use of it.

*Id.* at 365 (citations omitted).

The language in section 39–3–135 differs significantly from the language considered and invalidated by the Tenth Circuit in *Rockwell.* The *Rockwell* decision lacks precedential value in this case since section 39–3–135 eliminates the constitutional problems presented by the original statute, section 39–3–112. Specifically, the opening phrase in 39–3–135(1), when read together with subsection (4)(c), cures the constitutional defect present in the earlier statute by allowing real property owned by the United States to be tax-exempt. My interpretation is not inconsistent with the Tenth Circuit's decision in *Rockwell.* Rather, section 39–3–135 is constitutional as to federally owned land because such property is excluded from taxation under section 39–3–135(4)(c).

In *United States v. County of Fresno,* 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977), the Supreme Court upheld a California tax on the possessory interests of the United States Forest Service employees in their use of government-owned housing located in national forests in California, and determined

that the tax does not violate the Supremacy Clause of the United States Constitution. The Court approved a California statute which authorized counties to impose an annual use or property tax on possessory interests in improvements on tax-exempt land. The measure of the tax was proportionate to the total value of the residences which could be properly attributed to the beneficial use by the employees, and the tax did not fall upon the federal government's interest in the property. Specifically, the federal employees were taxed on "the annual estimated fair rental value of the houses, discounted to take into account essentially the same factors considered by the Forest Service in computing the amount that it deducted from the salaries of employees who used the houses." *Id.* at 456, 97 S.Ct. at 701.

In upholding the constitutionality of the statute, the Supreme Court expressly premised its finding upon the fact that the statute taxed only the value of the user's interest and did not include in the user's taxable value any value attributable to the interest of the United States:

> At oral argument the Government conceded that a state income tax could be imposed on the employees for the value of the occupancy—thus conceding that its value to the employee is capable of being severed from its value to the Forest Service and of being accurately measured.... Here, both appellees have sought to ... tax the employees only on the portion of the total value of the houses which may be properly attributed to *their* possessory interest.

*Id.* at 466, 97 S.Ct. at 706.

In determining that section 39–3–135 violates the Supremacy Clause, the district court stated:

> Defendants cite *Fresno* as authority for the constitutionality of C.R.S. section 39–3–135 as applied to users of federal land; in fact, *Fresno* confirms that C.R.S. section 39–3–135 cannot be constitutionally applied to users of federal land. The *Fresno* statute survived constitutional scrutiny precisely because it avoided the fatal flaw of C.R.S. 39–3–135. *Fresno* affirms that C.R.S. 39–3–135 violates the Supremacy

Clause because it taxes the full value of the United States' ownership interest.

I disagree. Colorado's *ad valorem* tax for exempt property is not comparable to the taxing scheme approved in *Fresno*. The present case is not a *Fresno* situation since section 39–3–135 does not include any provisions, with the exception of section 39–3–135(6), that specifically limits taxation to the possessory interest of federally owned land. We note, however, that if the General Assembly had adopted a *Fresno*-type approach, then Mesa Verde would have been subject to taxation under section 39–3–135.

*Borg–Warner, Continental,* and *Murray* hold that the federal government's constitutional immunity from state taxation is not infringed when state governments impose on a private corporation a tax on the use or possession of tax-exempt property because of its ownership by the United States government, where such property is used in the course of the private corporation's own business conducted for profit. Further, where the legal incidence of the tax falls on private parties, and they are "entities independent of the United States [using the property in connection with their own commercial activities for profit-making]," the "tax on them cannot be viewed as a tax on the United States itself." *United States v. New Mexico,* 455 U.S. 720, 738, 102 S.Ct. 1373, 1385, 71 L.Ed.2d 580 (1982).

I therefore disagree with the district court and would hold that section 39–3–135 is neither facially unconstitutional nor unconstitutional as applied to federally owned land because Mesa Verde's interest in the subject land is exempted from taxation under section 39–3–135(4)(c). I further conclude that section 39–3–135 does not violate the Supremacy Clause of the United States Constitution.

## IV.

Finally, I disagree that Mesa Verde's use of the subject land pursuant to its contract with the United States falls under section 39–3–135(6) and that the County was authorized to tax Mesa Verde's possessory interest in the subject land under that section. Maj.

op. at 11. The relevant language of section 39–3–135 provides:

**39–3–135. Taxation of exempt property—taxes not to become lien.** (1) Except as otherwise provided in this section, when any real property which is exempt from taxation for any reason is leased, loaned, or otherwise made available to and used by a private individual, association, or corporation in connection with a business conducted for profit, the lessee or user of such real property shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property.

§ 39–3–135(1), 16B C.R.S. (1994). The statute contains several tax exemptions:

(4)(a) This section shall not apply to any real property owned by the United States, the state of Colorado, any home rule or statutory county, city and county, city, or town, or any territorial charter city if such real property is subject to payments in lieu of property taxes in a sum equal to the amount of property tax that the taxing entity would annually receive if the real property were owned by any private person or corporation.

. . . .

(4)(c) Except for *ski recreation area uses* assessed pursuant to the provisions of subsection (6) of this section, this section shall not apply to any real property owned by the United States . . . when the use of such real property is the result of a lease of or a concession in or is relative to the use of a public park, market, fairground, or similar property which is available to the use of the general public. . . .

. . . .

(6) The possessory interest, and only the possessory interest, of the lessee or permittee of lands owned by the United States and leased or permitted for use for recreational purposes in connection with a business conducted for profit shall be subject to property tax pursuant to the provisions of this section.

12. The Senate and House committees that considered the 1988 amendment heard testimony from ski areas only. *See Hearings on H.B. No.*

§ 39–3–135(4)(a), (c), (6), 16B C.R.S. (1994) (emphasis added).

In determining that Mesa Verde's use of the land is authorized by section 39–3–135(6), the majority places undue weight on the fact that section (6) does not refer specifically to "ski recreation areas." As the majority acknowledges, however, in statutory interpretation, the statute must be read as a whole to give effect to its entire policy and objective. Maj. op. at 5; *Aulston v. United States*, 915 F.2d 584 (10th Cir.1990), *cert. denied*, 500 U.S. 916, 111 S.Ct. 2011, 114 L.Ed.2d 98 (1991). Yet, the majority dismisses the importance of the exclusionary phrase in section (4)(c) which must be read in conjunction with section (6).

In my view, the majority departs from the clear language of section 39–3–135(4)(c) and (6). When these two sections are read together, section (4)(c) explicitly details the class of users, namely, ski recreation area users, assessed pursuant to the provisions of subsection (6). Further, the majority has produced no legislative history and I cannot accept that the General Assembly intended a contrary result when it enacted subsection (6).

I would hold that Mesa Verde's operation of the concession does not fall within the ski-area exemption excepted out in subsection (4)(c) and specifically referred to in subsection (6) of section 39–3–135. My review of the legislative history reveals that the legislature intended section 39–3–135(6) to reach a specific class of users, users for recreational purposes, and that the statute was intended to apply strictly to ski areas that obtain land from the United States to be used for recreational purposes.[12] Mesa Verde's concession is open to the public. Mesa Verde makes its services available not for recreational purposes, but for purposes of providing facilities and support services to people visiting the Park. Even though the public is using the Park for recreational purposes, I do not believe that Mesa Verde's function in the Park is within the legislative contemplation of subsection (6).

*1015 Before the House and Senate Finance Committees*, 56th Gen. Assembly, 1st Reg.Sess. (Jan. 20, 1988; Mar. 3, 1988).

Accordingly, I dissent and would therefore affirm the Montezuma County District Court's ruling that Mesa Verde is not subject to taxation under section 39–3–135. Additionally, I would reverse the district court's ruling that section 39–3–135 is unconstitutional as applied and violates the Supremacy Clause of the United States Constitution.

I am authorized to say that Justice ERICKSON joins in this dissent.